# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# COOKEVILLE DIVISION

| SANDY LEANDER McCLELLON, | ) |
| :--- | :--- |
| Plaintiff, | ) |
| v. | ) No. 2:20-cv-00015 |
| NURSE BENNETT, et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Sandy Leander McClellon, an inmate at the Cumberland County Jail ("CCJ") in Crossville, Tennessee, filed a *pro se* complaint under 42 U.S.C. § 1983 against Cumberland County Sheriff Casey Cox, CJC Administrator Captain Tim Claflin, Quality Correctional Health Care ("QCHC"), and Nurse Bennett.[1] (Doc. No. 1.) He also filed an application to proceed in this Court without prepaying fees and costs. (Doc. No. 2.) The case is before the Court for a ruling on the application and for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"). 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e.

**I.   Application for Leave to Proceed as a Pauper**

The Court may authorize a prisoner to file a civil suit without prepaying the filing fee. 28 U.S.C. § 1915(a). McClellon's application to proceed as a pauper and certified trust account statement reflect that he cannot pay the full filing fee in advance. (Doc. No. 2). Accordingly, the application will be granted and the $350.00 filing fee will be assessed as directed in the accompanying Order. 28 U.S.C. § 1915(b)(1).

---

[1] The Complaint also includes a reference to "all staff" as Defendants. However, as written it is unclear whether this non-specific phrase refers to CCJ staff or QCHC staff. (See Doc. No. 1 at 3.) If appropriate, McClellon may seek to amend the Complaint to add additional defendants.

## II. Initial Review of the Complaint

Under the PLRA, the court must review and dismiss any prisoner complaint filed *in forma pauperis* if it is frivolous or malicious, fails to state a claim, or seeks monetary relief from an immune defendant. 28 U.S.C. § 1915A.

### A. Standard of Review

To determine whether a complaint "fails to state a claim on which relief may be granted" under the PLRA's screening requirements, the court applies the same standard as under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Hill v. Lappin, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true unless they are entirely without credibility. Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011); Tackett v. M & G Polymers, USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009) (citing Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009)). An assumption of truth does not extend to legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)). The Court determines whether those factual allegations "plausibly suggest an entitlement to relief," Williams, 631 F.3d at 383 (quoting Iqbal, 556 U.S. at 681 (2009)), that rises "above the speculative level," Twombly, 550 U.S. at 555.

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." Williams, 631 F.3d at 383; Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). Even under this lenient standard, however, *pro se* plaintiffs must meet basic pleading requirements and are not exempted from the requirements of the Federal Rules of Civil Procedure. Martin v. Overton, 391 F.3d 710, 714 (6th Cir. 2004); Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989); see also Young

Bok Song v. Gipson, 423 F. App'x 506, 510 (6th Cir. 2011) (explaining the role of courts is not "to ferret out the strongest cause of action on behalf of *pro se* litigants" or to "advis[e] litigants as to what legal theories they should pursue").

### B. Factual Allegations and Claims

McClellon's problems at the CCJ began in July of 2019. At that time, he refused to sign some paperwork. He alleges that, in response, jail personnel began to call him racial slurs, take his personal property, and lock him down. After he complained to multiple outside entities, CCJ staff began opening and reading McClellon's regular and legal mail and refusing to transmit his outgoing mail to others. On December 19, 2019, a "Sergeant Steve" allegedly appeared at McClellon's cell upset about a letter he had written. Sergeant Steve opened the letter, threw it at McClellon while screaming "you're not going to do this," pointed his taser at McClellon's head, called him the n-word, and threatened him.[2] (Doc. No. 1 at 5.)

In a more general sense, McClellon alleges that CCJ is an "all white" facility that treats African-Americans like "modern day slavery." (Id. at 6-7.) He alleges that Captain Claflin allows officers to "run their shift how they fit," giving "no say so" and "no rights" to inmates. (Id. at 6.) Liberally construing the Complaint, McClellon broadly alleges that prison staff frequently use racial slurs and disrespect African-American prisoners, treat them disproportionately harshly, and unfairly punish them. He also claims that prison officials "keep [prisoners] [un]til they can't [any] more" due to lack of funding. (Id. at 4.) He believes that prison officials "ruin peoples' lives for their personal gain." (Id. at 5.)

---

[2] McClellon does not identify "Sergeant Steve" as a defendant in this action. (See Doc. No. 1 at 3.)

3

McClellon also alleges that Sheriff Casey Cox has said that he intends to "starve the[ ] inmates," and CCJ officials do, in fact, "starve [prisoners] to death." (Id. at 1; 6-7.) McClellon believes that CCJ diverts the budget for inmate food to pay for prison staff. He claims to have lost 44 pounds between July 2019 and February 2020.

Additionally, McClellon complains about the medical and dental care at CCJ. More specifically, McClellon alleges that QCHC has not treated either his diabetes and related conditions or his dental problems. At an intake appointment with a nurse around July 8-9, 2019, McClellon explained his diabetes, high blood pressure, and acid reflux/stomach problems. McClellon alleges that Nurse Bennett – the "overseer" of QCHC at CCJ – subsequently gave various reasons to avoid providing needed medication or medical treatment, including that records had not been released from other providers and that care was the responsibility of McClellon's family or his counsel. McClellon alleges that he was punished for seeking medical care.

In September 2019, McClellon specifically complained to QCHC about numb feet, thirst, and headache. In response, QCHC personnel discovered McClellon's blood sugar was high. They prescribed the drug Metformin and ordered a nightly snack. However, McClellon did not see a doctor. Within a month, Nurse Bennett stopped both the medication and the nightly snack. McClellon continued to request to see a doctor for diabetes, but Bennett refused. McClellon alleges that, as of February 2020, he had a "bad case of neuropathy from diabetes" for which he had received "no help."[3] (Id. at 8.) McClellon has requested a number of sick calls, but has been allowed to see the Nurse Practitioner only once for a constipation and urine issue. Finally,

---

[3] Neuropathy, commonly caused by diabetes, is nerve damage causing weakness, numbness, and pain, often in the hands and feet,. See National Institute of Neurological Disorders and Stroke, Principal Neurology Fact Sheet, at https://www.ninds.nih.gov/Disorders/Patient-Caregiver-Education/Fact-Sheets/Peripheral-Neuropathy-Fact-Sheet.

McClellon had a tooth with a nerve exposed for over four months, but was denied dental care and told to get his family to pay for it. McClellon, however, has no living family.

Based upon these allegations, McClellon brings Section 1983 claims based upon conditions of confinement, property damage, and deliberate indifference to a serious medical need. (Id. at 10.)

**C.     Analysis**

Section 1983 creates a cause of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. Wurzelbacher v. Jones-Kelley, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a Section 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. Carl v. Muskegon Cty., 763 F.3d 592, 595 (6th Cir. 2014).

1.     Claims Against the Cumberland County Jail

As an initial matter, the CCJ is not a proper defendant under Section 1983, which creates a cause of action only against persons acting under color of state law. 42 U.S.C. § 1983. "For purposes of § 1983, 'person' includes individuals and 'bodies politic and corporate.'" Hix v. Tennessee Dep't of Corr., 196 F. App'x 350, 355 (6th Cir. 2006) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 & n. 55 (1978)). A county jail "is a place; it is not a 'person' that can be sued under 42 U.S.C. § 1983." Novatne v. Elrod, No. 3:19-cv-00821, 2020 WL 1666516, at *3 (M.D. Tenn. Apr. 3, 2020) (quoting Tucker v. Salandy, No. 3:17-cv-00671, 2017 WL 2438401, at *2 (M.D. Tenn. June 6, 2017)). To the extent that McClellon's claims against the CCJ could be construed as claims against Cumberland County, they are encompassed by the official-capacity claims discussed below. Accordingly, the claims against the CCJ will be dismissed.

5

### 2. Property Damage, Conditions of Confinement, and Due Process Claims

McClellon brings claims related to property damage, conditions of confinement, and due process against Sheriff Cox and Captain Claflin. As a threshold matter, McClellon does not, as required by the Sixth Circuit, specify whether he sues these Defendants in their individual or official capacity. See Shepard v. Wellman, 313 F.3d 963, 967 (6th Cir. 2002) (explaining the Sixth Circuit "require[s] § 1983 plaintiffs 'to set forth clearly in their pleading that they are suing the state defendants in their individual capacity for damages, not simply in their capacity as state officials'") (quoting Wells v. Brown, 891 F.2d 591, 592 (6th Cir. 1989)); Beil v. Lake Erie Corr. Records Dep't, 282 F. App'x 363, 367 (6th Cir. 2008) (citing Shepard and Wells). Generally, "if a plaintiff does not specify the capacity of his suit against a defendant, official capacity is presumed unless the allegations of the complaint would provide notice to a defendant of the plaintiff's intent to sue him or her in an individual capacity." Brown v. CCA/Metro Davidson Det. Facility, No. 3:13-cv-00423, 2013 WL 3071052, at *2 (M.D. Tenn. June 18, 2013) (citing Whittington v. Milby, 928 F.2d 188, 193 (6th Cir. 1991) and Shepherd, 313 F.3d at 967-68). Here, McClellon consistently refers to Cox and Claflin by their official titles and the allegations concern only the performance of their duties in supervising the operation of the CCJ. Further, McClellon does not demand punitive damages. Proctor v. Bledsoe, No. 3:13-00309, 2014 WL 1341931, at *4 (M.D. Tenn. Apr. 3, 2014) (explaining that courts consider, among other things, "the nature of the plaintiff's claims, [and] requests for compensatory or punitive damages" under the "course of proceedings" test to determine whether defendants have received notice of an intent to hold them personally liable) (citing Shepard, 313 F.3d at 967 and Moore v. City of Harriman, 272 F.3d 769, 772 n.1 (6th Cir. 2001) (en banc)). Accordingly, the Court construes the Complaint as suing Sheriff

Cox and Captain Claflin in their official capacity only.[4] See, e.g., Proctor, 2014 WL 1341931, at *4 (concluding sheriff was being sued only in official capacity).

"[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent." Alkire v. Irving, 330 F.3d 802, 810 (6th Cir. 2003) (citing Kentucky v. Graham, 473 U.S. 159, 165 (1985)). Here, Sheriff Cox and Captain Claflin represent Cumberland County. Thus, McClellon's official-capacity claims against these Defendants are effectively claims against Cumberland County. Phillips v. Shelton, No. 2:18-cv-00077, 2019 WL 429679, at *4 (M.D. Tenn. Feb. 4, 2019); Novatne, 2020 WL 1666516, at *3.

Cumberland County is subject to suit under Section 1983. See Hadrick v. City of Detroit, Mich., 876 F.3d 238, 243 (6th Cir. 2017) (citing Monell, 436 U.S. at 690-92); Torrens v. Jacks, No. 3:19-cv-00434, 2019 WL 5261107, at *3 (M.D. Tenn. Oct. 17, 2019). However, under Section 1983 the County cannot be held liable under a theory of *respondeat superior* or vicarious liability. Connick v. Thompson, 563 U.S. 51, 60 (2011). Rather, McClellon must allege: (1) that he suffered a constitutional violation; and (2) that a policy or custom of Cumberland County directly caused

---

[4] The Court notes that even if it were it to construe individual capacity claims against Sheriff Cox and Captain Claflin, those claims would be dismissed. "Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior." Hall v. Trump, No. 3:19-cv-00628, 2020 WL 1061885, at *5 (M.D. Tenn. Mar. 5, 2020) (quoting Heyerman v. Cty. of Calhoun, 680 F.3d 642, 647-48 (6th Cir. 2012); see also Murphy v. Grenier, 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability."). Section 1983 liability cannot be premised solely on a theory of *respondeat superior*, or the right to control employees. Id. (citing Hays v. Jefferson Cty., 668 F.2d 869, 872 (6th Cir. 1982)). Accordingly, supervisory officials are not liable in their individual capacities unless they "either encouraged the specific incident of misconduct or in some other way directly participated in it." Id. (citing Hays, 668 F2d at 874.) McClellon does not allege that Sheriff Cox or Captain Claflin were personally involved in these particular alleged violations of his rights, rather that they acted as CCJ supervisors. The Complaint does allege that McClellon complained in writing to Sheriff Cox, but no action was taken. (Doc. No. 1 at 2.) However, "[a] failure to take corrective action in response to an inmate grievance or complaint does not supply the necessary personal involvement for Section 1983 liability." *Woodard v. Farris*, No. 2:20-cv-00007, 2020 WL 1469886, at *5 (M.D. Tenn. Mar. 25, 2020) (citations omitted).

7

the violation. See Hadrick, 876 F.3d at 243 (citing Monell, 436 U.S. at 690-92); Phillips, 2019 WL 429679, at *4. A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom or tolerance or acquiescence of federal rights violations. Burgess v. Fischer, 735 F.3d 462, 478 (6th Cir. 2013).

For the most part, McClellon does not attribute these alleged harms to any particular Cumberland County policy. He alleges only that individual CCJ officers, absent any guiding policy, damaged his property. Likewise, McClellon attributes much of the alleged mistreatment of African-American inmates to the malfeasance of CCJ staff, rather than to a deliberate county policy. Accordingly, the bulk of these allegations do not state a Section 1983 claim against Cumberland County.

However, two specific allegations can be read as McClellon attempting to invoke a policy or custom. First, the liberally-construed Complaint alleges that Sheriff Cox initiated and implemented a county policy and practice to "starve the [ ] inmates." (Doc. No. 1 at 7.) The legal standard for such a conditions of confinement claim depends upon whether McClellon was a pretrial detainee or a convicted prisoner at the time of the alleged events. For prisoners, the Eighth Amendment's bar against cruel and unusual punishment imposes a duty upon CCJ officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care" to guarantee prisoner safety. Farmer v. Brennan, 511 U.S. 825, 832 (1994). A claim that CCJ officials have failed to meet this obligation requires: (1) a "sufficiently serious" deprivation that falls below a "minimal civilized measure of life's necessities," and (2) "deliberate indifference to inmate health or safety" on the part of a CCJ official. Hamby v. Gentry, No. 3:12-CV-01296, 2013 WL 3315494,

8

Case 2:20-cv-00015   Document 10   Filed 06/15/20   Page 8 of 17 PageID #: 42

at *5 (M.D. Tenn. July 1, 2013) (quoting Spencer v. Bouchard, 449 F.3d 721, 727 (6th Cir. 2006)). For pretrial detainees, the Fourteenth Amendment's due process clause precludes "punish[ment] prior to an adjudication of guilt." Bell v. Wolfish, 441 U.S. 520, 535 (1979). A pretrial detainee can demonstrate that he was subjected to unconstitutional punishment by showing: (1) "an expressed intent to punish on the part of the detention facility officials," or (2) that "a restriction or condition is not rationally related to a legitimate government objective or is excessive in relation to that purpose." J.H. v. Williamson Cty., 951 F.3d 709, 717 (6th Cir. 2020) (citing Bell, 441 U.S. at 535 and Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015)). Here, the Complaint does not allege whether McClellon was a pretrial detainee or a prisoner at the time of the relevant events.[5] While it appears from certain allegations (see Doc. No. 1 at 4) that McClellon was a pretrial detainee, the Court cannot be certain. This is not an obstacle, however, because the Court finds that McClellon's allegation concerning starvation of inmates is sufficient to state a claim under either standard.

Under the Eighth Amendment, McClellon has alleged a "sufficiently serious" deprivation that falls below a "minimal civilized measure of life's necessities." Hamby, 2013 WL 3315494, at *5. He further alleges that CCJ staff were deliberately indifferent to his health or safety because the deprivation resulted in obvious substantial weight loss. Under the due process clause of the Fourteenth Amendment, McClellon has alleged a deprivation that was either intended to punish or was not rationally related to a government purpose or excessive in relation to that purpose. J.H., 951 F. at 717. Accordingly, McClellon has pled the elements of a conditions of confinement claim regardless of whether he was a pretrial detainee or a prisoner at the time he was allegedly starved.

---

[5] McClellon has, as allowed, handwritten the Complaint rather than use the Court form that has a section for this information, and he has not provided background regarding his incarceration or date of conviction.

9

Case 2:20-cv-00015 Document 10 Filed 06/15/20 Page 9 of 17 PageID #: 43

McClellon has further alleged that this unconstitutional deprivation occurred pursuant to a policy or practice initiated by Sheriff Cox. Sheriff Cox is the final policymaker for the CCJ. See Wright v. Fentress Cty., Tenn., 313 F.Supp.3d 886, 871 (M.D. Tenn. 2018) ("[I]t is generally accepted that the sheriff is the final policymaker over the operation of a county jail.") (quoting Freeman v. Weatherford, No. 3:12-CV-266, 2012 WL 2344633, at *5 (M.D. Tenn. June 20, 2012)). Taken together, this is sufficient to allow, at this early juncture, McClellon's conditions of confinement claim to proceed for further development. Compare with Brooks v. Daniels, Civil Action No. 3:12CV-P446-S, 2012 WL 5866453I, at *2 (W.D. Ky. Nov. 19, 2012) (collecting cases of minor deprivations and explaining that "[i]solated deprivations of meals" do not rise of the level of a constitutional violation).

Second, the Complaint alleges that it is the policy and practice of the CCJ to house inmates for as long as possible as a method of obtaining funding for the county. (Doc. No. 1 at 4.) The Court liberally construes this as a claim that Cumberland County is detaining inmates beyond the time allowed for economic purposes. "[A]s a general proposition . . . courts have recognized the Eighth and Fourteenth Amendment may be implicated when a prisoner is detained beyond his jail sentence." Beil, 282 F. App'x at 368 (collecting cases); Harris v. Tennessee, No. 3:19-cv-00174, 2020 WL 107101, at *6 (M.D. Tenn. Jan. 9, 2020). Thus, for example, a prisoner may be able to state a due process claim related to procedures for sentence calculation. Harris, 2020 WL 107101, at *6. However, McClellon must sufficiently allege that his own due process rights have been violated. See Jaco v. Bloechle, 739 F.2d 239, 242 (6th Cir. 1984) (holding that a cause of action under Section 1983 generally "is a personal action cognizable only by the party whose civil rights ha[ve] been violated"); Stanley v. Vining, 602 F.3d 767, 769 (6th Cir. 2010) (explaining that a

10

state prisoner attempting to allege a due process violation "must allege the deprivation of a property or liberty interest").

In the Complaint, McClellon appears to primarily complain about several months of delays in his criminal case. Specifically, he alleges that his court hearings were postponed several times, and that his case was delayed while he had to complain about and move to replace his public defender. (See Doc. No. 1 at 4.) However, McClellon does not allege that he was being improperly detained or that he was incarcerated longer than permitted by law. (Id.) Furthermore, he does not tie the actions of these third parties to any alleged CCJ or Cumberland County policy to improperly prolong his detention.[6] (Id.) Thus, McClellon has not sufficiently alleged that he was deprived of any due process rights. Furthermore, to the extent McClellon seeks to bring this claim on behalf of inmates who were injured by such an alleged county policy, he cannot bring suit under Section 1983 based on violations of the constitutional rights of others. See Claybrook v. Birchwell, 199 F.3d 350, 357 (6th Cir. 2000) (explaining that "only the purported victim . . . may prosecute a Section 1983 claim") (citations omitted); Warth v. Seldin, 422 U.S. 490, 499 (1975) ("[T]he plaintiff must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."). Accordingly, because McClellon does not adequately allege a constitutional injury, this claim must be dismissed. Compare with Harris, 2020 WL 107101, at *6 (allowing claim regarding deficient sentence recalculation process to proceed where the plaintiff alleged that his own sentence had been improperly calculated).

---

[6] Additionally, McClellon complains about the guilty plea rate in Cumberland County. (Id.) But he does not allege that he pled guilty or was pressured into doing so.

11

### 3. Deliberate Indifference to Serious Medical Need Claims

McClellon also claims that he has been denied necessary medical and dental care by Captain Claflin, QCHC, and Nurse Bennett. As discussed above, the official-capacity claim against Captain Claflin is the equivalent of a municipal liability claim against Cumberland County. Like Cumberland County, QCHC, as an entity that performs the traditional state function of providing medical services to inmates, is subject to suit under Section 1983. See Shadrick v. Hopkins Cty., Ky., 805 F.3d 724, 736 (6th Cir. 2015) (citing Rouster v. Cty. of Saginaw, 749 F.3d 437, 453 (6th Cir. 2014)); Strader v. Cumberland Cty., No. 2:19-cv-00045, 2020 WL 291383, at *5 (M.D. Tenn. Jan. 21, 2020). QCHC similarly cannot be held liable under a theory of *respondeat superior* or vicariously liability. Street v. Corr. Corp. of Am., 102 F.3d 810, 818 (6th Cir. 1996). Rather, McClellon must allege: (1) that he suffered a constitutional violation; and (2) that policy or custom of QCHC directly caused the violation. See Savoie v. Martin, 673 F.3d 488, 494 (6th Cir. 2012) (citing Miller v. Sanilac Cty., 606 F.3d 240, 255 (6th Cir. 2010)). Finally, McClellon does not specify whether he sues Nurse Bennett in his individual or official capacity. However, McClellon alleges that Bennett personally violated his rights and seeks damages for pain and suffering. Accordingly, the Court finds that the Complaint contains sufficient allegations to put Bennett on notice that he is being sued individually. Heyerman, 680 F.3d at 647-48.

"Eighth Amendment jurisprudence clearly establishes that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain that is violative of the Constitution."[7] Darrah v. Krisher, 865 F.3d 361, 367 (6th Cir. 2017) (quoting

---

[7] For purposes of a claim for deliberate indifference to serious medical needs, pretrial detainees have a right to adequate medical treatment under the Fourteenth Amendment's Due Process Clause, Richko v. Wayne Cty., Mich., 819 F.3d 907, 915 (6th Cir. 2016), that is analogous to the right of prisoners under the Eighth Amendment. Garretson v. City of Madison Heights, 407 F.3d 789, 795 (6th Cir. 2005). For this reason, McClellon will state a claim for deliberate indifference

12

Estelle, 429 U.S. at 104, 105) (internal quotation marks omitted). "[A] prisoner's Eighth Amendment right is violated when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs." Comstock v. McCrary, 273 F.3d 693, 702 (6th Cir. 2001) (citing Estelle, 429 U.S. at 104). "Dental needs fall into the category of serious medical needs because dental care is one of the most important needs of inmates." Flanory v. Bonn, 604 F.3d 249, 253 (6th Cir. 2010) (quoting McCarthy v. Place, 313 F. App'x 810, 814 (6th Cir. 2008)) (internal quotation marks omitted).

"A constitutional claim for deliberate indifference contains both an objective and a subjective component. The objective component requires a plaintiff to show the existence of a 'sufficiently serious' medical need." Dominguez v. Corr. Med. Servs., 555 F.3d 543, 550 (6th Cir. 2009) (quoting Farmer, 511 U.S. at 834). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Villegas v. Metro. Gov't of Nashville, 709 F.3d 563, 570 (6th Cir. 2013). "[W]hen an inmate had a medical need diagnosed by a physician as mandating treatment, the plaintiff can establish the objective component by showing that the prison failed to provide treatment, or that it provided treatment so cursory as to amount to no treatment at all." Rhinehart v. Scutt, 894 F.3d 721, 737 (6th Cir. 2018) (citations and internal quotation marks omitted). "A cognizable claim regarding inadequate dental care, like one involving medical care, can be based on various factors, such as the pain suffered by the plaintiff, the deterioration of the teeth due to a lack of treatment, or the inability to engage in normal activities." McCarthy, 313 F. App'x at 814 (quoting Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998)).

---

to a prisoner's serious illness or injury states a cause of action under Section 1983 regardless of whether he is pretrial detainee proceeding under the Fourteenth Amendment or an inmate proceeding under the Eighth Amendment. Torrens, 2019 WL 5261107, at *3.

For the subjective component, a plaintiff must allege that an official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . also dr[e]w the inference." Winkler v. Madison Cty., 893 F.3d 877, 891 (6th Cir. 2018) (quoting Farmer, 511 U.S. at 837). "[N]egligence or negligent medical treatment are not actionable theories of liability under 42 U.S.C. § 1983." Boldon v. Claiborne Cty. Det. Ctr., No. 3:16-CV-441-TWP-HBG, 2017 WL 4158612, at *6 (E.D. Tenn. Sept. 19, 2017) (citing Daniels v. Williams, 474 U.S. 327, 328-331 (1986)); see also Estelle, 429 U.S. at 106 (explaining that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"). A prisoner's difference of opinion regarding diagnosis or treatment also does not rise to the level of a constitutional violation. Estelle, 429 U.S. at 107. Further, where an inmate has received some medical attention, but disputes the adequacy of that treatment, the federal courts are reluctant to second-guess the medical judgments of prison officials and constitutionalize claims that sound in state tort law. Darrah, 865 F.3d at 372 (citing Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). Finally, to set forth a viable claim for the denial of medical care, a plaintiff must argue that his health suffered as a consequence of such alleged denial. See Thaddeus–X v. Blatter, 175 F.3d 378, 401 (6th Cir. 1999).

Concerning medical care, McClellon's diabetes is sufficiently serious to satisfy the objective component for the purpose of initial review. Vick v. Core Civic, 329 F. Supp. 3d 426, 440, 446-47 (M.D. Tenn. 2018) (assuming for purposes of PLRA screening that diabetes constitutes a sufficiently serious medical need) (citing Rouster, 749 F.3d at 446 and Garretson, 407 F.3d at 797). For the subjective component, liberally construing the Complaint, McClellon's allegations reflect that Cumberland County, QCHC, and Nurse Bennett were aware of his serious medical need. McClellon notified the CCJ of his diabetes and made multiple requests for sick calls,

doctor visits, and medical treatment; those requests were allegedly ignored or denied by QCHC generally and Nurse Bennett in particular. In the one instance diabetes treatment was provided by QCHC, McClellon alleges that Nurse Bennett arbitrarily stopped it within weeks. Further, McClellon alleges that he received "no help" whatsoever for diabetic neuropathy. Finally, McClellon alleges he has suffered detrimental effects from the failure to treat his diabetes properly, including exacerbation of existing symptoms, significant weight loss, and development of diabetic neuropathy. For the purpose of initial review, this is sufficient to allege that McClellon suffered a constitutional violation.

Concerning dental care, McClellon's "tooth with a nerve exposed" left untreated for four months is also sufficiently serious to satisfy the objective component for the purpose of initial review. See McCarthy, 313 F. App'x at 814 (serious medical need was alleged based on a cavity and attendant pain that went untreated for months). For the subjective component, McClellon alleges that Cumberland County, QCHC, and Nurse Bennett were aware of this condition – specifically, that he formally requested dental care but was denied and was told to obtain funds for treatment from others.[8] For the purpose of initial review, this is also sufficient to allege that McClellon suffered a constitutional violation.

Accordingly, the Court finds McClellon has stated a deliberate indifference claim against Nurse Bennett individually. Liberally construing the Complaint in McClellon's favor, the Court also infers that McClellon alleges Cumberland County and QHCH have a policy or custom of denying necessary medical and dental treatment to inmates. Specifically, he alleges that Captain

---

[8] Although McClellon does not specify that it was Nurse Bennett who told him to seek dental treatment elsewhere, this assertion is located in a paragraph of the Complaint in which McClellon relates other actions of Nurse Bennett. At this early stage, the Court reasonably infers that McClellon intended to allege that it was Nurse Bennett who spoke to him regarding the denial of dental care. Nurse Bennett may, of course, challenge this inference at a later stage of the case.

Claflin stated that the CCJ does not "house inmates [with] medical issues."[9] (Doc. No. 1 at 8.) Although it is a close question, the Court concludes that this is sufficient, at this point, to pursue deliberate indifference claims against Cumberland County and QCHC. Were McClellon facing a motion to dismiss, his burden of proof would be much higher. He would need to point to specific county or corporate unconstitutional policies, show that the policies were applied in his case, and demonstrate that the policies were a "moving force" behind the denial of treatment or the inadequate treatment. See Vick, 329 F.Supp.3d at 446 (collecting cases). However, McClellon is not confronted by a motion to dismiss at this time and faces a "lower burden . . . to overcome" at the PLRA screening stage. Id. Accordingly, the Court will allow these deliberate indifference claims to proceed for further development. Of course, McClellon will bear the burden of supporting his allegations with evidence as this case progresses. The Court simply finds that, for now, these claims survive the required screening under the PLRA.

### III. Conclusion

For these reasons, McClellon's conditions of confinement claim against Sheriff Cox (in his official capacity) concerning alleged starvation of inmates, and deliberate indifference to serious medical need claims based on denial of diabetes and dental care against Captain Claflin (in his official capacity), QCHC, and Nurse Bennett (in his individual capacity), will be referred to the Magistrate Judge for further proceedings. All other claims will be dismissed.

---

[9] To be clear, the Complaint does not allege that Sheriff Cox was involved in inmate medical care.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

17